United States District Court
Southern District of Texas
**ENTERED**
February 21, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| LeRoy Henry Nassif, | § | |
| *Plaintiff,* | § | |
|  | § | |
| v. | § | Civil Action H-21-1152 |
|  | § | |
| Janet Yellen and | § | |
| the Internal Revenue Service, | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff LeRoy Henry Nassif, pro se,[1] filed this case in April 2021 against

Defendants Janet Yellen and the Internal Revenue Service (IRS). ECF No. 1. Nassif

alleges disability discrimination under the Americans with Disabilities Act (ADA),

42 U.S.C. §§ 12101–12213, retaliation under the ADA and section 501 of the

Rehabilitation Act, and harassment, sex discrimination, and retaliation under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. ECF No. 64.

Many dispositive and non-dispositive motions are ripe for the court's

consideration. Plaintiff's motions to strike, ECF Nos. 79, 89, motion for sanctions,

ECF No. 84, and motion to suppress deposition, ECF No. 87, are denied as explained

below. Plaintiff opposed by motion Defendant's response to Plaintiff's motion to

---

[1] Nassif was represented by counsel beginning in September 2021. ECF No. 15. Nassif's counsel moved to withdraw in January 2022. *See* ECF No. 33. The court granted the motion to withdraw in March 2022. *See* ECF No. 48.

strike. ECF No. 93. The court considered Plaintiff's motion and denies it. As discussed in detail below, the court recommends that Defendants' motion to dismiss, ECF No. 66, and motion for summary judgment, ECF No. 88, be granted and that Plaintiff's motions for summary judgment, ECF Nos. 70, 85, be denied. The court recommends that the case be dismissed with prejudice.

## 1. Procedural and Factual Background

As summary judgment evidence, Nassif has presented no affidavit or other testimony from any witness. The court has only portions of the record of Nassif's Equal Employment Opportunity (EEO) proceeding, Nassif's timelines and other exhibits, and Nassif's own statements made throughout the record. The court has painstakingly reviewed all of Nassif's filings and has attempted to account for every fact he has alleged. The court presumes, for purposes of ruling on the dispositive motions, that the facts Nassif has presented in his pleading, briefs, and exhibits are facts that he could and would present in admissible form at trial. *See* Fed. R. Civ. P. 56(d). Defendants have not objected to Nassif's evidence. The court takes his factual allegations as true but disregards conclusory allegations and legal conclusions. *See Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848 (5th Cir. 2018).

Nassif began working for the IRS in 1986. ECF No. 79 at 1. Nassif received promotions, raises, and positive evaluations from 1986 until August 2015.

ECF No. 69 at 1. For the period June 1, 2015, to August 7, 2015, Nassif received performance appraisal ratings of "outstanding" in four critical job categories and "exceeds fully successful" in one category. *See* ECF No. 64-1 at 1. The numeric average of those ratings was 4.8 on a five-point scale. *See id.* at 4. As the court understands Nassif's allegations, this evaluation was performed toward the end of his outgoing supervisor's tenure at the IRS.

In August 2015, Nassif was a revenue officer advisor when Jennifer Green became Nassif's group manager. ECF No. 64 at 2, 4–5, 32. At the time, the IRS had an anti-harassment policy "designed to address unwelcome, hostile and/or abusive conduct before it [rose] to a level of harassment that create[d] a hostile work environment." ECF No. 80 at 1. The policy defined harassment, set out the process for reporting harassment and filing EEO complaints, and outlined the responsibilities of management. *Id.* at 2–7. It appears that Nassif took steps outlined in this policy when reporting allegations of harassment. Nassif was a National Treasury Employee Union (Union) member. ECF No. 64 at 2. Nassif believes that the terms and conditions of his employment were governed by the 2016 IRS/National Treasury Employee Union Agreement. ECF No. 97 at 2.

Nassif was a witness in his colleague, Vera Robinson's EEO proceeding. ECF No. 70-2 at 2. On October 29, 2015, Green received notice that Nassif had been requested to testify on behalf of Robinson at an EEO Commission hearing.

3

ECF No. 64 at 2, 5, 8; ECF No. 97 at 2. Green conveyed that information to Nassif the following day. ECF No. 64 at 2, 5, 8. Green later told Bobbie Pemberton, the EEO investigator, that Green did not know whether Nassif provided testimony in Robinson's proceeding. *Id.* at 7.

In early November 2015, Green performed a time utilization review of Nassif's work for the dates October 27, 2015, and October 29, 2015. ECF No. 64 at 21. Green requested and received from Nassif a list of cases on which he had worked during those two days. *Id.* at 4. Green did not conduct case reviews but only verified the time Nassif spent working on the cases and compared it to his time sheets for those dates. *Id.* On November 18, 2015, Nassif asked Green about a previously submitted request for leave during the holiday season. ECF No. 64 at 41. Green stated that the request was approved "as long as the office [was] covered." *Id.* On November 25, 2015, Nassif complained to Green and Doreen Peterson, territory manager, about the time utilization review. *Id.* at 7. In response, Green explained the process, provided the results from the time utilization review and four case reviews, and offered Nassif assistance with meeting work goals on a daily basis. *Id.* at 4, 7.

On December 3, 2015, Nassif sought EEO counseling, alleging that he had been subjected to retaliatory disparate treatment and nonsexual harassment. ECF No. 64 at 20–21. Nassif filed an informal EEO complaint against Green on December 11, 2015. *Id.* at 5. About a week later, Green withdrew approval of

Nassif's holiday leave request, explaining that more senior revenue officer advisors had requested the same dates and that she needed Nassif to cover the office. *Id.* at 42. On December 24, 2015, Green informed Nassif that his work performance had declined. ECF No. 98 at 3. Soon thereafter, Green emailed Nassif his mid-year review for June 1, 2015, to November 30, 2015. ECF No. 64 at 4. Green explained that she had considered the time utilization review, the four case reviews, case work Nassif had submitted for approval, previous review items, and personal observation of his work. *Id.* Green lowered Nassif's performance rating from 4.8 in August 2015 to below 3.0. *See* ECF No. 64 at 2; ECF No. 64-1 at 1, 4. According to Nassif, he was the only employee to receive a rating that low *Id.* at 2. As the court understands Nassif's allegations, he took issue with the period covered by the evaluation because it overlapped with the departure evaluation by his prior supervisor and partially covered a period before Green was his supervisor.

On January 7, 2016, Nassif formally filed a complaint with the EEO Commission alleging workplace discrimination. *See* ECF No. 64 at 4; ECF No. 69-2 at 11. After an EEO hearing, the administrative judge found that Nassif did not meet his burden of proving that the IRS "discriminated against him based on his sex (male) or retaliation for prior EEO activity as alleged by his averred incident of disparate treatment and harassment." ECF No. 69-2 at 5–6.

In early February 2016, Green told Nassif that cases involving lien withdrawals with identity theft issues would be assigned alphabetically. ECF No. 64 at 37. As the court understands it, Nassif passed case information to Alma Burks believing that the case would be assigned to her. *See id.* Burks disagreed, gave the information back to Nassif, and reported the incident to Green. *See id.* Instead of supporting Nassif's position, Green redistributed all lien withdrawal cases to Nassif. *Id.* As a result, Nassif received old lien withdrawal cases from Burks, which inflated the number of late cases in his inventory. *Id.* Green denied Nassif's request for assistance. *Id.*

On March 8, 2016, Nassif requested administrative leave to work on an EEO interrogatory, apparently for his own case. ECF No. 98-1 at 1. Nassif informed Peterson and the Union representative that he was planning to file a harassment claim against Green based on the uneven distribution of cases. *Id.* On March 9, 2016, Nassif complained to Peterson that Green was harassing him, in part, by not responding to his request for administrative leave to work on his EEO interrogatory. *Id.* at 2. Soon thereafter, Green sent Nassif a report listing five late cases. ECF No. 64 at 18. Peterson decided that, effective March 14, 2016, cases would be assigned alphabetically to the revenue officer advisors. ECF No. 98-1 at 2. According to Nassif, Green assigned Nassif even more cases, which resulted in an inventory that was unmanageable. *Id.* Green did not reduce Nassif's case inventory as he requested.

*Id.* Green did, however, reduce the case inventory on another revenue officer advisor, Cynthia Blaze, ostensibly because she was helping another revenue officer advisor, Amelia Lerma, with seizure cases. *Id.*

On March 17, 2016, Nassif's performance was declining. ECF No. 64 at 35. Green issued Nassif a memorandum that explained the steps for successfully processing lien certificate cases and provided templates, example letters, and other aides for completing those cases. *Id.* at 35–36. Immediately after receiving the memorandum, Nassif complained of retaliation to Green, Peterson, the Union chapter president, and others. ECF No. 98-1 at 2. On March 25, 2016, Green conducted case reviews and issued Nassif a report listing ten late cases. ECF No. 64 at 18; ECF No. 98-1 at 2. On March 29, 2016, Green issued Nassif a performance counseling memorandum explaining where performance improvement was needed. ECF No. 64 at 36. Green also committed to meeting with Nassif by phone once every two weeks for the next sixty days. *Id.*

On April 4, 2016, Green notified Nassif about complaints against him that had been lodged by taxpayers. ECF No. 98-1 at 2. Green assigned Nassif a work coach. ECF No. 64 at 36. On April 5, 2016, Green suspended Nassif's teleworking agreement. ECF No. 64 at 18; ECF No. 98-1 at 2. On April 13, 2016, according to Nassif, Green reduced Pete Alvarado's tasks, which Nassif believes was an accommodation for a sleep disorder. ECF No. 64 at 18; ECF No. 98-1 at 2. About

the same time, Nassif failed to submit a self-assessment prior to the end of his annual rating period. ECF No. 64 at 36. Green continued to perform reviews of Nassif's cases. *Id.* According to Nassif, Green would not approve Nassif's cases unless he used the templates Green provided. ECF No. 98-1 at 2. Nassif opposed the use of Green's templates because she had not obtained approval for the templates from the Union. *Id.* Green responded that she was not requiring the use of templates. *Id.*

In May 2016, Green continued to meet with Nassif biweekly. ECF No. 64 at 36. Green issued Nassif a memorandum to counsel him on excessive leave usage. *Id.* On May 12, 2016, Nassif received a supplemental EEO request from the investigator. On May 19, 2016, Green asked Nassif to justify a request in April for a toner cartridge because he had recently requested two others. *Id.* On May 27, 2016, Nassif complained to Pemberton, the EEO investigator, that Green was harassing him by contacting the taxpayers on his cases and setting unreasonable deadlines for the completion of case work. ECF No. 64 at 40. On May 31, 2016, Green performed another case review and issued a report that listed numerous late cases. ECF No. 64 at 18; ECF No. 98-1 at 2.

According to Nassif, when a new revenue officer advisor began in June, Green did not transfer any of Nassif's cases to the new advisor. ECF No. 98-1 at 3. On June 10, 2016, Nassif told Green that his inventory was unmanageable and requested a reduction under the Union agreement. *Id.* On Nassif's midyear review, Green

8

lowered Nassif's ratings in several categories. ECF No. 64 at 36. On June 15, 2016, Green filed a Treasury Inspector General for Tax Administration (TIGTA) complaint against Nassif. ECF No. 98-1 at 3. According to Nassif, Green based the complaint on allegations that Nassif had altered an official IRS letter, that he was falsifying time sheets by overusing the time code for administrative tasks such as responding to emails and phone calls, that he was improperly classifying and reporting cases, and that he was failing to open trouble tickets for computer down time. ECF No. 76-2 at 2.

On June 20, 2016, Green counseled Nassif about sending unencrypted email. ECF No. 98-1 at 3. On June 22, 2016, Nassif requested a reduction of his inventory to fifty cases and requested that he be allowed to work ten cases at a time due to his stress and diabetes. ECF No. 76-1 at 6. On June 23, 2016, Green notified Nassif that she had submitted his request for an inventory reduction. ECF No. 98-1 at 3. In June and July 2016, Green received two complaints from the Department of Justice about Nassif's conduct while working with their office. ECF No. 64 at 36. Green issued Nassif a memorandum that identified the areas in which his performance was unacceptable and provided case review examples, information to help improve performance, a list of ways she would assist him, and the consequences of failing to improve to "at least minimally successful" in the next sixty days. *Id.*

On July 1, 2016, Green limited Nassif's administrative time to one hour per day unless approved by Green. ECF No. 98-1 at 3. Green also performed another case review and transferred seventeen of Nassif's cases to other revenue officer advisors. *Id.* On July 14, 2016, Nassif received a personal improvement plan (PIP) letter in a meeting with a TIGTA agent. *Id.* Nassif submitted a rebuttal to his annual appraisal for the period ending on May 31, 2016. *Id.* On July 18, 2016, Nassif received another memorandum requiring that he close eighteen cases in seventeen days. ECF No. 64 at 19; ECF No. 98-1 at 3. On August 3, 2016, Green challenged Nassif about time he "spent purging and shredding the case files." ECF No. 98-1 at 3.

On August 31, 2016, Green issued Nassif a negative performance memorandum for failing to meet the July 18, 2016 case-closure mandate. ECF No. 98-1 at 4. On September 28, 2016, the reasonable accommodation coordinator and a Union representative met with Nassif. *Id.* In October 2016, Green encouraged Nassif to contact a taxpayer who had been trying to reach Nassif. *Id.* On November 1, 2016, Nassif received an unacceptable performance memorandum. *Id.* Green issued another memorandum directing Nassif to resolve cases by November 2, 2016. *Id.*

On December 7, 2016, Nassif's alternate work schedule was canceled. ECF No. 98-1 at 4. On December 8, 2016, Peterson emailed Nassif a letter proposing

10

the termination of his employment due to poor work performance. *Id.* According to
Nassif, the letter began the termination process and allowed him several months to
comply with PIP letter and avoid termination. ECF No. 88-1 at 6. On January 26 and
February 10, 2017, Nassif received memoranda setting work performance deadlines.
ECF No. 64 at 17–18. On March 17, 2017, Nassif complained about having negative
comments added to his case file history. *Id.* at 17.

When Nassif's request for inventory reduction was denied, Nassif filed a
union grievance and submitted documentation from his psychologist/psychiatrist
recommending that Nassif be removed from the environment. ECF No. 88-1 at 4–5.
According to Nassif, a transfer was approved, but Peterson intervened and denied
the reassignment. ECF No. 98 at 4; *see also* ECF No. 88-1 at 4. On May 1, 2017, the
union denied Nassif's grievance based on the 2015 evaluation. ECF No. 88-1 at 6.
On May 5, 2017, the union denied Nassif's grievance about the December 2016
letter proposing termination. *Id.*

On May 11, 2017, Green and Peterson scheduled a meeting with Nassif to
hand him a termination letter. ECF No. 88-1 at 6. Nassif left work before they
arrived. *Id.* Nassif testified that he filed a grievance based on the termination and
that he then decided to retire because he could not "risk losing all the benefits and
everything." *Id.* Although the IRS records reflect that Nassif retired, he claims he
was forced to retire. ECF No. 84 at 3. According to Green, Nassif retired on May 5,

2017. ECF No. 76-1 at 19. On June 15, 2017, Nassif filed a formal EEO complaint that alleged the IRS had discriminated against him based on sex, age, and disability and had retaliated against him for participating in a prior EEO proceeding. Nassif also alleged that the IRS constructively discharged him into retirement through ongoing harassment and/or disparate treatment. ECF No. 64 at 32–33.

In January 2021, the EEOC issued two decisions on Nassif's requests for reconsideration. *See* ECF No. 1 at 8–13. They addressed Nassif's allegations of discrimination based on sex, age, disability, and retaliation in connection with separate actions taken by Defendants. *Id.* at 8–9, 11–12. The EEOC denied both of Nassif's requests for reconsideration. *Id.* at 10, 12.

### 2. Nondispositive Motions

Nassif filed a motion to strike Defendants' response to his first motion for summary judgment. ECF No. 79. Nassif argues that Defendants' response should be stricken under Federal Rule of Civil Procedure (Rule) 12(f) because it fails to address all the issues and authority raised in Nassif's summary judgment motion. *Id.* at 2–4. Rule 12(f) allows a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Although Nassif does not agree with Defendants' response, he does not show any reason for striking it. The motion to strike is denied.

Nassif seeks sanctions because he never received Defendants' response to his first summary judgment motion and because Defendants incorrectly stated the "email service date" in their response. ECF No. 93 at 2, ECF No. 84 at 2. He moves for additional sanctions, alleging that his deposition was conducted improperly, that Defendants failed to produce documents requested in administrative hearings and in this case, and that Defendants have filed frivolous motions. ECF No. 84 at 2–3. On April 8, 2022, the court held a hearing at which Nassif represented that all written discovery had been completed and that he did not need any more documentary evidence from Defendants. ECF No. 54 at 1. The court ordered that Nassif's deposition be taken by July 29, 2022. *Id.* In light of the court's orders, Nassif fails to state any factual or legal basis for the award of sanctions. Sanctions are denied.

Nassif filed a motion to suppress his deposition under Rule 32(d)(4), which states in part that an objection to how the testimony was transcribed is waived unless a motion to suppress is promptly made after discovering the error. *See* ECF No. 87. Nassif also filed a motion to strike his deposition from Defendants' summary judgment exhibits under Rule 12(f), which, again, allows the court to strike certain material from a pleading and, as discussed above, is not applicable. ECF No. 89. The motions are based on Nassif's assertion that the transcript of his deposition contains words incorrectly transcribed, irrelevant evidence, and repetitive material, among other alleged errors. ECF Nos. 87, 89. The proper remedy for these types of

complaints is to review the deposition and provide a statement of all errors pursuant to Rule 30(e). Nassif did not do this. Defendants agreed to allow Nassif to read and sign his deposition, even though he did not make a timely request under Rule 30(e)(1). ECF No. 87-1 at 2; *see also* Fed. R. Civ. P. 30(e)(1). To the extent that Nassif had objections during the deposition, he should have made them at that time. He also had the opportunity to file specific objections to specifically identified exhibits. Nassif has failed to demonstrate that his deposition should be suppressed or that it should be struck from the record. The motions are denied.

### 3. Defendants' Motion to Dismiss

A court may dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1). "A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The party asserting jurisdiction has the burden to prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Id.* The court liberally construes pro se pleadings. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "[P]ro se plaintiffs must still plead factual allegations that raise the right to relief above the

14

speculative level." *Id.* (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016)).

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" A motion to dismiss under Rule 12(b)(6) "is not meant to resolve disputed facts or test the merits of a lawsuit." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). When considering a motion to dismiss, a court must consider the complaint in its entirety, including documents incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Defendants seek dismissal of Nassif's ADA claims, dismissal of Nassif's failure to accommodate claim, and dismissal of the IRS as a defendant. Because the ADA specifically excepts the United States from the ADA's definition of "employer," Nassif's ADA claims must be dismissed. *See* 42 U.S.C. § 12111(5)(B)(i); *see also Henrickson v. Potter*, 327 F.3d 444, 447 (5th 2003) (citing 42 U.S.C. § 12111(5)(B) and stating that "the entire federal government is excluded from the coverage of the ADA"). The Rehabilitation Act is the exclusive remedy for

federal employees who allege disability claims against their employers. *Cavada v. McHugh*, 589 F. App'x 717, 718 (5th Cir. 2014).

The Rehabilitation Act requires employees of federal agencies to exhaust administrative remedies prior to filing suit. *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015). Reading Nassif's live pleading as broadly as possible, Nassif did not articulate claims for disability discrimination or failure to accommodate[2] under the Rehabilitation Act and did not plead facts in support of either claim. The only claim that Nassif pleaded under the Rehabilitation Act was retaliation. But that claim was not exhausted. Nothing in the case record reflects that Nassif ever raised an administrative claim alleging that he was retaliated against based on disability. The only claims of retaliation evident in the administrative record are those based on Nassif's participation in Robinson's EEO proceeding, which has nothing to do with any alleged disability. *See, e.g.,* ECF No. 69-2 at 11–13. Nassif's claims under the Rehabilitation Act must be dismissed.

Finally, the proper defendant in a civil action under Title VII brought by an employee of an executive agency is "the head of the department, agency, or unit," not the agency itself. 42 U.S.C. 2000e-16(c). Because only Nassif's Title VII claims

---

[2] The court notes that the EEO Commission's decision issued on February 10, 2020, found that Nassif failed to timely seek EEO counseling for his disability claim based on failure to accommodate. *See* ECF No. 69-3 at 3, 6–7; *see also* ECF No. 1 at 12.

are properly before the court, Janet Yellen, Secretary of the Treasury, is the proper defendant. The IRS should be dismissed.

### 4. Motions for Summary Judgment

Nassif filed two motions for summary judgment, ECF Nos. 70, 85, and Defendants filed one motion for summary judgment, ECF No. 88. The motions are considered together.

#### A. Summary Judgment Standard of Review

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant

must then "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Nor is the "mere existence of a scintilla of evidence" sufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## B. Summary Judgment Analysis

As an initial matter, the court notes that Nassif raises claims in his motions and briefs that he did not plead in his live pleading. *See, e.g.*, ECF No. 84 at 2

(alleging that "[D]efendants have violated Section 8(a)(3) of the National Labor Act"); ECF No. 85 at 2 (alleging that "[D]efendants denied [P]laintiff due process under the Fifth Amendment of the United States Constitution"). Because such claims are not properly before the court, they are not addressed. Moreover, this court is not authorized to decide, for example, whether Nassif's supervisor followed IRS policies and procedures or violated the Union agreement; whether the EEO investigator reached the correct result; or whether the EEO process was flawed.

The court's only task on summary judgment is to apply federal law to the causes of action properly before the court to determine whether the facts, when viewed most favorably to Nassif, raise any genuine issue of material fact that a jury must decide in order to determine whether Defendants violated Title VII. Although the court views the facts in Nassif's favor, Nassif cannot overcome a summary judgment motion by relying on conclusory allegations and unsubstantiated assertions. *See Turner*, 476 F.3d at 343.

Defendants seek summary judgment on Nassif's remaining Title VII claims of harassment, sex discrimination, and retaliation.

### i. Harassment

"Title VII . . . makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'" *West v. City of Houston, Tex.*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*,

915 F.3d 320, 325 (5th Cir. 2019)). To survive Defendants' motion for summary judgment on his hostile work environment claim based on sex discrimination, Nassif must show that: (1) "[]he is a member of a protected class; (2) []he suffered unwelcomed harassment; (3) the harassment was based on [his] membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'" *Id.* (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Among other deficiencies, Nassif fails to present facts in support of the third and fourth elements. Nassif testified in response to a question about the acts of harassment he was claiming:

> A. I don't recall all the significant ones. . . . Vera Robinson's EEO case and everything from that point forward. All the adverse actions that occurred, such as, one, lowering the evaluation; issuing the termination letter prematurely; putting me on a [PIP]; starting the second year off with a lower evaluation; initiating a TIGTA review for the TIGTA thing I initiated on management. June the 5th is when they initiated theirs in retaliation for the one I started in October of 2015. Then failing to respond to the oral response February 15th, 2017.
> This is [a] continued pattern of retaliation and harassment. Then the second period of my new appraisal period, they start the same stuff over and over.

ECF No. 94-1 at 6.

None of the alleged harassing actions appear to have been motivated by his sex, or any other protected category, as is required to meet the third element. Nothing

in Nassif's testimony suggests the alleged harassment was in any way based on his sex or that he believed it to be. Nassif also fails to show that the harassment affected a term, condition, or privilege of employment, which requires that "the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West*, 960 F.3d at 741–42. It must be subjectively and objectively hostile or abusive. *Id.* at 742. The court acknowledges that Nassif found his work environment to be subjectively hostile, but it also must be objectively hostile. The factors that the court must consider are frequency; severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Id.* Nothing in the record indicates that Green's actions were in any way physically threatening, humiliating, or even offensive. On the contrary, the evidence shows that Green reviewed Nassif's work, found it subpar, and, over the course of more than sixteen months, offered him coaching, templates, and other aids to help him improve. None of Green's actions interfered with Nassif's work but rather sought to improve his performance.

Defendants should be granted summary judgment on Nassif's harassment claim.

### ii. Sex Discrimination and Retaliation

Title VII also makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). To survive Defendants' motion for summary judgment on sex discrimination and retaliation, Nassif must first establish a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a prima facie case is established, the defendant must provide the court with a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. *Id.* If the employer does so, the plaintiff has the burden to raise a genuine issue of material fact that the defendant's stated reason is mere pretext for unlawful discrimination or retaliation. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003).

To satisfy his prima facie burden of discrimination, Nassif must produce evidence showing that he: (1) is a member of a protected group; (2) was qualified for the position of revenue officer advisor; (3) suffered an adverse employment action; and (4) "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (2007). To satisfy his prima facie burden of retaliation, Nassif must produce evidence showing that: "(1) he

participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* at 557.

Nassif argues that Defendants took numerous adverse employment actions against him, including lowering his evaluation score, revoking his telework agreement, assigning a coach, initiating a TIGTA investigation, and issuing a PIP letter. *See, e.g.,* ECF No. 79-1 at 3. These and other similar actions that Nassif alleges do not satisfy the third element of a prima facie case. *See Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) ("Adverse employment actions include only ultimate employment actions, such as hiring, firing, promoting, compensating, or granting leave.").

Nassif also argues that he was forced to retire to avoid risking the loss of benefits. Absent evidence of a constructive discharge, voluntary retirement in the face of termination does not rise to the level of an adverse employment action. *See Tagliabue v. Orkin, L.L.C.*, 794 F. App'x 389, 393–94 (5th Cir. 2019). "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022) (internal quotation marks omitted) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).

23

In deciding if a plaintiff was constructively discharged, the Fifth Circuit considers whether the plaintiff suffered a demotion; a reduction in salary; a reduction in job responsibilities; a reassignment to menial or degrading work; badgering, harassment, or humiliation at the hands of the employer "calculated to encourage the employee's resignation;" or "offers of early retirement that would make the employee worse off whether the offer were accepted or not." *Bye*, 49 F.4th at 924. (quoting *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008)). Nassif has presented no evidence in support of any of these factors. Nassif's allegations of harassment are insufficient because, even when fully credited, they are not evidence that Defendants sought to encourage Nassif's retirement. The evidence shows that Defendants were intent on terminating his employment not on forcing his retirement. Although forced retirement may qualify, under certain circumstances, as constructive discharge, Nassif has not shown facts that establish the elements of constructive discharge in this case.

Because Nassif has not shown that he suffered an adverse employment action, his discrimination and retaliation claims should be dismissed. Nassif's discrimination claim fails for the additional reason that he presents no evidence that he was replaced by someone of a different gender or was the victim of disparate treatment. To establish disparate treatment, Nassif must show that Defendants treated him "more harshly than 'similarly situated' employees for 'nearly identical'

actions." *Vincent v. Coll. of the Mainland*, 703 F. App'x 233, 238 (5th Cir. 2017). This requires that Nassif identify at least one coworker *outside* of Nassif's protected class (male) who held the same job or job responsibilities, shared the same supervisor, or had her employment status determined by the same person. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). The coworker identified as a comparator must have a history of similar violations or infringements to Nassif. *See id.*

Nassif named three other employees whom he identified as similarly situated individuals for his claim of sex discrimination:[3]  Cynthia Blaze, Alma Burks, and Amelia Lerma. *See* ECF No. 88-1 at 8–12. Green provided productivity data to the EEO investigator, showing that neither Blaze nor Burks had poor performance issues like Nassif. ECF No. 76-1 at 25; *see also* ECF No. 70 at 6. Nassif offered nothing more than his own opinion without specific knowledge that Blaze, Burks, or Lerma were similarly situated individuals who were treated more favorably than he was. *See generally* ECF No. 88-1 at 8–12. Nassif thus failed to meet his summary

---

[3] The court notes that Nassif identified Pedro (Pete) Alvarado as a similarly situated individual for Nassif's disability claim for failure to accommodate, which the court recommends be dismissed. Nassif alleges that Alvarado received an accommodation for a sleep disorder. Nassif admitted at his deposition, however, that he and Alvarado did not have all the same job responsibilities. *See* ECF No. 88-1 at 7; ECF No. 94-1 at 8. Nassif also admitted that he did not know whether Alvarado had an accommodation. *See* ECF No. 88-1 at 7; ECF No. 94-1 at 8.

judgment burden of producing evidence in support of the disparate treatment element of his sex discrimination claim.

Even if Nassif had met his prima facie burden on the discrimination or retaliation claim, Defendants proffered poor performance as a legitimate nondiscriminatory reason for their actions in pursuing the termination of his employment. Nothing in the record suggests that Defendants had any other reason, discriminatory or not, for seeking termination.

Defendants should be granted summary judgment on Nassif's sex discrimination and retaliation claims.

### 5. Conclusion

The court recommends that Defendants' motion to dismiss be granted and that Nassif's ADA and Rehabilitation Act claims be dismissed. The court also recommends that the IRS be dismissed as an improper defendant. Because there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on Nassif's Title VII claims, the court recommends that Defendants' motion for summary judgment be granted, that Nassif's motions for summary judgment be denied, and that this case be dismissed with prejudice. All other motions are denied.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 21, 2023

Peter Bray
United States Magistrate Judge